IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| AMERICAN CHEMICALS & EQUIPMENT, INC. 401(K) RETIREMENT PLAN, | |
| Plaintiff, | No. 4:14-cv-00044-JAJ |
| vs. | |
| PRINCIPAL MANAGEMENT CORPORATION and PRINCIPAL GLOBAL INVESTORS, LLC, | **ORDER** |
| Defendants. | |

This case arises from two complaints filed by Plaintiff, American Chemicals & Equipment, Inc., under the Investment Company Act of 1940 ("ICA"). Plaintiff holds shares in mutual funds managed by Defendants. The ICA provides that investment managers like Defendants owe a fiduciary duty to shareholders of the funds they manage. Plaintiff's complaints allege that Defendants violated this duty by charging excessive fees, and seek to recover all or a portion of those fees.

This matter comes before the Court pursuant to Defendants' October 28, 2013, motion to dismiss. Pursuant to the parties' joint motion to consolidate, this order applies to both Plaintiff's original complaint and Plaintiff's August 27, 2014 "Anniversary Complaint."[1] Plaintiff resisted Defendants' motion to dismiss on November 7, 2013. Defendants filed their reply brief on November 12, 2013. This case has been recently transferred to this Court from the Northern District of Alabama.

## I. BACKGROUND

In its complaint, Plaintiff challenges Defendants' compensation for acting as investment advisers to a group of mutual funds referred to here as the "Principal Funds." Plaintiff is a

---

[1] The parties agree that Plaintiff filed its August 2014 complaint to preserve plaintiffs claim for damages in the year between Plaintiff's original filing and the filing of Plaintiff's Anniversary Complaint. These complaints are identical in their substantive claims aside from some updated publicly available information for the period from August 28, 2013 to August 27, 2014. To the extent that that updated information is relevant it is reflected in this order.

retirement plan of an Alabama corporation. Defendant Principal Management Corporation ("PMC") is registered with the Securities Exchange Commission as an investment adviser under the ICA and has been since 1968. Defendant Principal Global Investors ("PGI") is affiliated with PMC. Both PMC and PGI are investment advisers to the Principal Funds.[2]

The Principal Funds include six different mutual funds.[3] The Principal Funds are a "fund of funds." This means that each of the Principal Funds invests entirely in other mutual funds called "underlying funds." Each of the Principal Funds invests in the same pool of underlying funds, all of which are created, managed, or controlled by Defendants or their affiliates. The underlying funds' managers are called sub-advisers. Sub-advisers provide day-to-day investment management services for the Principal Funds. Plaintiff brings this claim against PGI and PMC in their capacity as advisers to the Principal Funds, and does not challenge any fees paid to the Principal Funds' sub-advisers who manage only the underlying funds.

Defendants collect an Investment Management Fee from Principal Fund Investors for providing advisory services. Plaintiff does not take issue with this Investment Management Fee. Defendants also charge Principal Fund investors, including Plaintiff, an Acquired Fund Fee. Defendants initially retain the entire Acquired Fund Fee before passing a portion of the fee on to the Principal Funds' various sub-advisers. In 2012, Defendants retained $80 million of the Acquired Fund Fee and awarded sub-advisers $40 million of the Acquired Fund Fee. In 2013, Defendants retained $102 million of the Acquired Fund Fee and sub-advisers received $52 million of the Acquired Fund Fee.

Plaintiff claims that Defendants' retention of this Acquired Fund Fee is a breach of Defendants' fiduciary duties to Principal Fund investors. Specifically, Plaintiff claims that Defendants provide no additional services to those performed in exchange for the Investment Management Fee justifying Defendants' retention of the Acquired Fund Fee. Plaintiff argues that Defendants' portion of the Acquired Fund Fee is, under the totality of the circumstances, "so disproportionately large that it bears no reasonable relationship to the services rendered in

---

[2] Defendants characterize PGI as a "sub-adviser." Motion to Dismiss at 3. Plaintiff refers to PGI as an "investment adviser." Complaint at ¶ 30. To the extent that this distinction is meaningful, we take the Plaintiff's allegations as to PGI's role as true. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

[3] The Principal Funds include: 1) Principal LifeTime Strategic Income Fund; 2) Principal LifeTime 2010 Fund; 3) Principal LifeTime 2020 Fund; 4) Principal LifeTime 2030 Fund; 5) Principal LifeTime 2040 Fund; and 6) Principal LifeTime 2050 Fund. Complaint at ¶ 1.

exchange for that fee and could not have been the product of arm's length bargaining." Complaint at ¶ 23. Plaintiff brought two counts of breach of fiduciary duty in its complaint.

In response, Defendants raise three arguments in their motion to dismiss. First, Defendants allege that Plaintiff does not have statutory standing to assert this claim under ICA § 36(b). Second, Defendants argue that Plaintiff has not alleged sufficient facts to state a claim for breach of fiduciary duty in violation of ICA § 36(b) under Federal Rule of Civil Procedure 12(b)(6). Finally, Defendants argue that Plaintiff's Count II, "Breach of Fiduciary Duty, Excess Profits from Economies of Scale," does not constitute an independent grounds for finding excessive fees. For the reasons stated below, the Court denies Defendants' motion to dismiss Plaintiff's Count I grants Defendants' motion to dismiss Plaintiff's Count II.

## II. ANALYSIS

### A.     Standing

Defendants argue that Plaintiff lacks standing to assert its claim. "[S]tanding is a threshold question" implicating the Court's subject matter jurisdiction to hear an action. *Sivolella v. AXA Equitable Life Ins. Co.*, 2012 WL 4464040, at *4 (D.N.J. Sept. 25, 2012) (citing *United States v. $487,825.00 in U.S. Currency*, 484 F.3d 662, 664 (3d Cir. 2007)). The party invoking the Court's jurisdiction bears the burden of establishing standing. *Sivolella*, 2012 WL 4464040, at *4 (citation omitted); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Defendants contend that Plaintiff does not have statutory standing under ICA § 36(b). 15 U.S.C. § 80a–35(b). "Statutory standing is simply statutory interpretation: the question it asks is whether Congress has accorded *this* injured plaintiff the right to sue the defendant to redress his injury." *Sivolella*, 2012 WL 4464040, at *4 (quoting *Graden v. Conexant Systems Inc.*, 496 F.3d 291, 295 (3d Cir. 2007)) (internal quotation marks omitted) (emphasis in original).

> ICA § 36(b) provides that
>
> the investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services . . . paid by such registered investment company or by the security holders thereof, to such investment adviser or any affiliated person of such investment adviser. An action may be brought under this subsection by . . . a security holder of such registered investment company on behalf of such company, against such investment adviser, or any affiliated person of such investment adviser . . . for breach of fiduciary duty in respect of such compensation . . . paid by such registered investment company or by the security holders thereof to such investment adviser or person.

15 U.S.C. § 80a–35(b).

Plaintiff is a Principal Funds shareholder and has been at all relevant times. As a shareholder, Plaintiff is a "security holder" of Principal Funds within the meaning of ICA § 36(b). See, e.g., *Stegall v. Ladner*, 394 F. Supp. 2d 358, 362–63 (D. Mass. 2005). Plaintiff does not claim to be a security holder of the underlying funds and does not seek to recover fees paid by the underlying funds.

Defendants argue that Plaintiff's claim is indistinguishable from the claim in *Curran v. Principal Management Corporation*, No. 4:09-cv-00433, 2011 WL 223872 (S.D. Iowa Jan. 24, 2011), in part because Plaintiff "challenges the fees that Defendants earn for providing services to the underlying funds," and contend that because Plaintiff is not a shareholder in the underlying funds, Plaintiff has no standing to bring this claim. See *Curran*, 2011 WL 223872, at *2. However, Plaintiff specifically limits its claims to fees charged to Plaintiff as a shareholder of the Principal Funds by Defendants as Principal Fund advisers, and disavows any claim to fees charged by sub-advisers to the Principal Funds and paid by the underlying funds. Complaint at ¶ 74. By doing so, Plaintiff distinguishes itself from the *Curran* plaintiffs, who attempted to bring a claim "in connection with fees *paid by* the Underlying Funds." *Curran* 2011 WL 223872, at *2 (emphasis added). The *Curran* plaintiffs argued that they had a security interest in the underlying funds by virtue of their interest in the "SAM" funds—analogous here to the Principal Funds. *Id.* The *Curran* plaintiffs argued that this security interest allowed them to "bring an action for breach of fiduciary duty in connection with fees paid by the Underlying Funds." *Id.* Plaintiff here makes no such argument. Instead, Plaintiff alleges that the Defendants, as advisers to the Principal Funds, first "pocket the entire Acquired Fund Fee from the Principal Funds as investment money" before distributing a portion of the fee to sub-advisers for managing the underlying funds. Complaint at ¶ 15. Plaintiff seeks recovery only of the fees charged to Plaintiff as a Principal Funds shareholder and kept by Defendants as advisers to that fund. *Id.* at ¶¶ 14, 24, 74.

The parties do not dispute that Defendants charge Plaintiff this fee as a Principal Fund shareholder. The Court finds that the Plaintiff has appropriately limited its claim to only those fees collected from Principal Fund interest holders and retained by Principal Fund advisers. Any dispute as to the work performed in exchange for this fee is a factual dispute not before the Court. As this is a fee assessed to Plaintiff as a security holder of the Principal Funds and they

have brought this claim only on behalf of the funds in which they have an established interest, Plaintiff has statutory standing to bring this claim. ICA § 36(b).

**B.      Sufficiency of Pleadings**

Defendants claim that Plaintiff's complaint fails to allege sufficient facts to state a claim that Defendants breached their ICA § 36(b) fiduciary duty. In stating a claim for breach of fiduciary duty under § 36(b), Plaintiff "must meet no more rigorous a burden than that found in Federal Rule of Civil Procedure 8(a)." *Amron v. Morgan Stanley Inv. Advisors, Inc.*, 464 F.3d 338, 343 (2d Cir. 2006) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)).

Federal Rule of Civil Procedure 8 requires that a complaint present "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* To survive a 12(b)(6) motion to dismiss for failure to state a claim, the claim "may be supported by showing any set of facts consistent with the allegations in the complaint*." Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007). The complaint must "be grounded in enough of a factual basis to move the claim from the realm of mere possibility to one that shows entitlement by presenting a 'claim to relief that is plausible on its face.'" *In re Federated Mutual Funds Excessive Fee Litig.*, 2009 WL 5821045, at *1 (W.D. Penn. Sept. 30, 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While not a "probability standard," the "plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a 'sheer possibility.'" *Iqbal*, 556 U.S. at 678. The Plaintiff must allege facts necessary to a finding of liability. *Amron*, 464 F.3d at 344 (citing *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 346–47 (2005)).

Furthermore, to adequately state a claim, Plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Stating a claim "requires a complaint with enough factual matter (taken as true) to suggest the required element . . . [and] enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556) (internal quotation marks omitted). When analyzing the adequacy of a complaint's allegations under Rule 8, the court must accept as true all of the complaint's factual allegations and view them in the light most favorable to the plaintiff. See *Swierkiewicz*, 534 U.S. at 508 n.1; *Twombly*, 550 U.S. at 555–56. The evaluation of a complaint upon a motion to dismiss "is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556

U.S. at 678. "All complaints must be read liberally; dismissal on the pleadings never is warranted unless the plaintiff's allegations are doomed to fail under any available legal theory." *Amron*, 464 F.3d at 343 (citing *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005)).

The ultimate inquiry here is whether the Plaintiff has pleaded sufficient facts under Rule 8 to assert a claim that the Defendant "charge[d] a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining." *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 964 F.2d 923, 928 (2d Cir. 1982); *Jones v. Harris Associates*, 559 U.S. 335 (2010). In assessing whether a fee is disproportionately large, the court should look at the totality of the circumstances. *Gartenberg*, 964 F.2d at 928. Relevant factors, known as "*Gartenberg* factors," include: "(1) the nature and quality of the services provided to fund shareholders; (2) the profitability of the fund to the adviser-manager; (3) fall-out benefits; (4) economies of scale; (5) comparative fee structures; and (6) the independence and conscientiousness of the trustees." *Forsythe v. Sun Life Financial, Inc.*, 417 F. Supp. 2d 100, 114 (D. Mass 2006). Here, Plaintiff has made factual allegations relating to each *Gartenberg* factor. However, "Plaintiffs need not make a conclusive showing of each of the *Gartenberg* factors, but, instead, may state a § 36(b) claim by alleging any combination of facts that plausibly support an inference that a particular fee, given all of the surrounding facts and circumstances, is disproportionately large to the services rendered in exchange for that fee." *Curran*, 2010 WL 2889752 at *9, vac'd on other grounds, 2011 WL 223872 (S.D. Iowa Jan. 24, 2011).

At the heart of a 36(b) claim is the relationship between the fees charged to the fund and the services rendered to the fund. "Claims under the statute must allege some connection between the wrongs alleged and excessive compensation of an investment adviser." *Forsythe*, 417 F. Supp. 2d at 115 (citing *Stegall*, 394 F. Supp. 2d at 374–77); see also *Strigliabotti v. Franklin Resources, Inc.*, 2005 WL 645529, at *3 (N.D. Cal. March 7, 2005); *Midgal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 327 (4th Cir. 2001) ("In order to determine whether a fee is excessive for purposes of Section 36(b), a court must examine the relationship between the fees charged and the services rendered by the investment adviser."). Plaintiff addresses the relationship between the fees in question and the services rendered in its discussion of *Gartenberg* factors one and two. In relation to these factors—the nature and quality of the services provided and the profitability of the Principal Funds to Defendants—Plaintiff alleges

6

that Defendants' costs for providing the services compensated by the Acquired Fund Fee are nominal. Complaint at ¶ 60. Because Defendants' costs of providing the services compensated the Acquired Fund Fee are nominal, Plaintiff argues that the Acquired Fund Fee is close to 100% profit to Defendants. *Id.*

Plaintiff asserts that Defendants' costs are nominal because Defendants provide no additional services beyond those for which they charge the Investment Management Fee justifying their retention of the Acquired Fund Fee. *Id.* at ¶¶ 47, 48. Plaintiff notes that while the sub-advisers provide virtually all daily management services to the Principal Funds, they receive only half the amount of the Acquired Fund Fee that Defendants retain. *Id.* at ¶ 49. Plaintiff essentially argues that Defendants' large portion of the Acquired Fund Fee constitutes "something for nothing." See *Forsythe*, 417 F. Supp. 2d at 116 (finding when plaintiff's theory was that fees amounted to "something for nothing," that fee may be inherently excessive and the nature of the services provided may be irrelevant to the plaintiff's theory). Defendants retained $80 million in 2012 and $102 million in 2013 for "mainly acting as a fee conduit" to the Principal Funds' sub-advisers. Complaint at ¶ 19; Anniversary Complaint at ¶ 3. Plaintiff alleges that Defendants' retention of double what Defendants pass on to sub-advisers despite performing no work in exchange for the fee is excessive. Complaint at ¶¶ 19, 48. Plaintiff has alleged facts in relationship to both the fee charged and the services provided. Cf. *Midgal*, 248 F.3d at 327 ("[P]laintiffs did not address in any way the relationship between the fees that the advisers received and the services which they provided in return.").

With respect to *Gartenberg* factor three, Plaintiff claims that Defendants reaped a variety of fallout benefits from their management of the Principal Funds, including attraction of new customers and cross-selling related funds to current customers. Complaint at ¶ 78. Furthermore, Plaintiff claims that Defendants receive "soft dollars," or credits given to Defendants from securities-industry firms in exchange for Defendants' routing the Principal Funds' securities transaction orders and other business to the firms. Plaintiff contends that the soft-dollar credits benefitted Defendants only and did not benefit the Principal Funds' shareholders. *Id.* at ¶ 79.

Some of Plaintiff's factual allegations relating comparative fee structures further illustrate Plaintiff's contention that this fee constitutes a large profit in exchange for little or no extra work. Defendants assert there is no mark-up associated with the Acquired Fund Fee. Motion at 3. However, Plaintiff contends just the opposite: that Defendants, as fund managers of the Principal

Funds, added a large premium to the sub-advisers' charge for Defendants' own benefit, effectively "padding the bill" in order to retain more money before passing along the sub-advisers' portion of the Acquired Fund Fees to them. *Id.* at ¶ 75. Plaintiff points to Vanguard LifeStrategy Moderate Growth Fund as a fee comparison. The LifeStrategy Fund is also a fund of funds. However, the LifeStrategy fund pays approximately 20 basis points for investment management services of the sort for which Defendant charges 67 basis points to the Principal Funds. *Id.* at ¶ 76. Though Defendant disputes the whether the comparison with Vanguard is relevant for purposes of this claim, the ultimate weight of this comparison is not before the Court. Taking the factual allegations of the complaint as true, this comparison contributes to the Plaintiff's basis for its claim.

Plaintiff contends that the Principal Funds experience large economies of scale, in part due to advances in computing and communication technologies, that Defendants are not passing along to investors. *Id.* at ¶¶ 64, 68. Plaintiff alleges that the Principal Funds' assets have grown to $18 billion, but that this increase in assets does not mean that Defendants' workload or costs in managing the assets has increased. *Id.* at ¶¶ 61, 67. Because allegations based on economies of scale depend in part on the status of the market as a whole, Plaintiff's inclusion of general information regarding the market is not irrelevant on this point, despite the fact that such generalities alone would be insufficient to state a claim.

Finally, Plaintiff claims that the directors were not independent or conscientious when they approved the Acquired Fund Fees. Plaintiff contends that the information Defendants provide to the board to establish the nature of their services to the Principal Funds has remained largely the same despite the Principal Funds' dramatic growth in assets. *Id.* at ¶ 85. Plaintiff alleges that Defendants do not provide the board with sufficient information to allow the directors to fulfill their obligations. *Id.* at ¶ 86. Plaintiff alleges that Defendants likely did not provide the board with adequate information regarding the services Defendants provided in exchange for advisory fees, fees charged and services provided by competitors with similar fund structures; fees and services Defendants provide to other clients; and economies of scale, among other things. *Id.* at ¶ 89. Plaintiff alleges it would benefit from discovery on this point. *Id.* at ¶ 90.

In summary, while Plaintiff has included some generalized statements regarding the mutual fund industry in its complaint, Plaintiff is not relying solely on speculation and has included some specific factual allegations regarding Defendants and their practices. *Cf.*

*Yampolsky v. Morgan Stanley Inv. Advisers Inc.*, 2004 WL 1065533, at *2 (S.D.N.Y. May 12, 2004) ("[C]onspicuously absent from either of the complaints are any factual allegations as to the actual fee negotiations or management and distribution services rendered by *these* defendants."). Plaintiff makes factual allegations regarding the nature of Defendants' services in exchange for this Acquired Fund Fee. Plaintiff alleges that while the Principal Funds' assets have grown, this value increase comes with little additional work for Defendants. Plaintiff alleges that Defendants' fees are high in comparison to other similar funds and in comparison to what Defendants charge similar clients. Finally, Plaintiff claims that Defendants are able to retain such a high portion of this fee in part because the Principal Funds' board of directors is not sufficiently independent and conscientious in reviewing these fees. The Court finds that these allegations meet Rule 8's liberal pleading standard. See *Curran*, 2010 WL 2889752 at *9, vac'd on other grounds, 2011 WL 223872 (S.D. Iowa 2011); *Forsythe*, 417 F. Supp. 2d at 115. Therefore, the Court denies Defendants' motion to dismiss for failure to state a claim.

## C.      Count II – Excess Profits from Economies of Scale

Defendants move to dismiss Plaintiff's Count II on the grounds that it does not constitute an independent cause of action. Plaintiff's Count II alleges that Defendants breached their ICA § 36(b) fiduciary duty to Plaintiff by failing to pass on economies of scale to Plaintiff. The Court agrees that breach of fiduciary duty based only on economies of scale is not an independent cause of action under ICA § 36(b), and instead is only one of the *Gartenberg* factors to be considered in determining whether an investment adviser has breached its fiduciary duty by charging a "fee that is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining." *Gartenberg*, 964 F.2d at 928; *Curran,* 2010 WL 2889752, at *10, vac'd on other grounds, 2011 WL 223872 (S.D. Iowa Jan. 24, 2011). "Excess profits from economies of scale" does not constitute an independent grounds for a § 36(b) claim and therefore Defendants' motion to dismiss Count II is granted.

## III.   CONCLUSION

For the reasons stated above, the Court finds that the Plaintiff has standing to bring this claim and that the Plaintiff has identified a 36(b) claim sufficient to withstand Defendants' motion to dismiss.

Upon the foregoing,

**IT IS ORDERED** that Defendants' motion to dismiss is **DENIED** as to Count I and **GRANTED** as to Count II.

**DATED** this 10th day of September, 2014.

_____
JOHN A. JARVEY
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF IOWA